ERIC GRANT
United States Attorney
DHRUV M. SHARMA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CHRISTOPHER WILLIAM EDWARD ABPLANALP,<br>Defendant. | CASE NO. 2:26-CR-00156-DAD<br>PLEA AGREEMENT<br>DATE: SEPTEMBER 21, 2026<br>TIME: 9:30 A.M.<br>COURT: Hon. DALE A. DROZD |

## I. INTRODUCTION

### A. Scope of Agreement.

The Information in this case charges the defendant with a violation of 18 U.S.C. § 1343 (Wire Fraud). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B. Court Not a Party.

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of the defendant, including activities which may not have been

charged in the Information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

The defendant will plead guilty to Count One in the Information – Wire Fraud. The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A ("Factual Basis") are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this agreement, including the factual admissions set forth in the Factual Basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this plea agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this plea agreement generally.

1. Waiver of Indictment:

The defendant acknowledges that under the United States Constitution he is entitled to be indicted by a grand jury on the charge to which he is pleading guilty and that pursuant to Rule 7(b) of the Federal Rules of Criminal Procedure he agrees to waive any and all rights he has to being prosecuted by way of indictment to the charge set forth in the Information. The defendant agrees that at a time set by the Court, he will sign a written waiver of prosecution by indictment and consent to proceed by

information rather than by indictment.

**B. Restitution.**

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. The defendant agrees the offense to which he is pleading guilty requires mandatory restitution pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii), and agrees to pay restitution to the victims for the total loss to the victims as a result of the scheme in an amount of $2,321,759.00 dollars.

The defendant agrees that all criminal monetary penalties imposed by the court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government. The defendant agrees that any payment schedule or plan set by the Court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time through all available means.

The defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

The defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of his assets without prior written consent of the United States Attorney, except that the defendant may sell, transfer or convey personal property (including used vehicles and personal items, but not financial instruments, ownership interests in business entities or real property) with an aggregate value of less than $5,000.

Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the Court.

**C. Fine.**

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense.

D. **Special Assessment.**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

E. **Violation of Plea Agreement by Defendant/Withdrawal of Plea.**

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 U.S.C. § 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions.

The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

**F. <u>Asset Disclosure.</u>**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above.

The defendant expressly authorizes the United States to immediately obtain a credit report to evaluate the defendant's ability to satisfy any monetary penalty imposed by the court. The defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

/././

/././

## III. THE GOVERNMENT'S OBLIGATIONS

### A. Other Charges.

The government agrees not to bring any other charges arising from the conduct outlined in the Factual Basis, except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea), VI.B (Stipulations Regarding Guideline Calculations), and VII.B (Waiver of Appeal and Collateral Attack) herein.

### B. Recommendations.

1. Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range as determined by the Court.

2. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in USSG § 3E1.1. This includes the defendant meeting with and assisting the Probation Officer in the preparation of the Presentence Investigation Report, being truthful and candid with the Probation Officer, not committing any new violations of law, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of USSG § 3C1.1, either in the preparation of the Presentence Investigation Report or during the sentencing proceeding.

### C. Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this plea agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, 18 U.S.C. § 1343 – Wire Fraud:

First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, and promises, and the concealment and omissions of material facts;

Second, the statements made, or facts concealed or omitted, as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

The defendant fully understands the nature and elements of the crime charged in the Information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty.

The maximum sentence that the Court can impose is twenty years of incarceration, a fine of up to $250,000 or twice the gross gain or gross loss, whichever is greater, a three-year period of supervised release and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B. Violations of Supervised Release.

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

/././

/././

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory Guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take it into account when determining a final sentence. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B. Stipulations Regarding Guideline Calculation.

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1. Base Offense Level: 7 [USSG § 2B1.1(a)(1)]

2. Specific Offense Characteristics:

   a. Loss Amount: +16 [USSG § 2B1.1(b)(1)(I) for a loss amount of $2,321,759.00, i.e., between $1.5 million and $3.5 million]

   b. Substantial Hardship: +2 [USSG § 2B1.1(b)(2)(A)(iii) – substantial hardship to the victim business owners as it caused a substantial loss in their savings, required one owner to alter retirement plans and return to work full time, and make significant payments to professionals to uncover the losses]

   c. Sophisticated Means: +2 [USSG § 2B1.1(b)(10)(C) – the defendant used sophisticated means by modifying, deleting or creating entries in accounting software in order to conceal the fraud]

3. Victim-related Adjustments:

   a. Abuse of Trust: +2 [USSG § 3B1.3 – the defendant abused a position of private trust in a manner that facilitated commission and concealment of the offense]

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three or Four adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for an adjustment based on the defendant's post-plea obstruction of justice (USSG § 3C1.1), if applicable.

The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a). The government reserves the right to oppose any variance from the Guidelines and will recommend that the defendant be sentenced to the low end of the applicable Guideline range as determined by the Court.

## VII. WAIVERS

### A. Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statute of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offense to which he is pleading guilty. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the Factual Basis is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea, dismiss the underlying charge, or modify or set aside his sentence on the count to which he is pleading guilty, the government shall have the rights set forth in paragraph II.E herein.

**C. Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

**A. Defense Counsel.**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 9/18/2026

NOA OREN
Attorney for Defendant

**B. Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my

case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 9-18-26

CHRISTOPHER WILLIAM EDWARD ABPLANALP
Defendant

C. **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated: 9/21/2026

ERIC GRANT
United States Attorney

DHRUV M. SHARMA
Assistant United States Attorney

EXHIBIT "A"

Factual Basis for Plea

Beginning in or about February 2023, and continuing through in or about July 2025, in Placer County in the State and Eastern District of California, and elsewhere, defendant CHRISTOPHER WILLIAM EDWARD ABPLANALP knowingly and with the intent to defraud devised, intended to devise, participated in and executed a material scheme and artifice to defraud Business-1 and its owners (Victim-1 and Victim-2) for the purpose of obtaining money by means of materially false and fraudulent pretenses, representations, and promises, and the concealment and omissions of material facts.

At all relevant times, ABPLANALP was employed by Business-1 as an Executive Manager. ABPLANALP was a trusted employee of Business-1, worked there for approximately 20 years, and was considered its owners' "right-hand man." Victim-1 and Victim-2 trusted ABPLANALP explicitly and granted him complete access to Business-1's finances. They expected ABPLANALP to work for their benefit and were induced by this relationship of trust to relax the care and vigilance they would have ordinarily exercised in the management of their financial affairs.

Notwithstanding, ABPLANALP repeatedly abused this trust and diverted over $2.3 million from Business-1 for his personal gain. At all relevant times, ABPLANALP created the false pretense that he was operating for the benefit of, and within the scope of his employment with, Business-1, when in reality he was stealing money from Business-1.

ABPLANALP executed his scheme to defraud in several different ways. One manner in which ABPLANALP stole money was by using an online payment processing system, Processor-1. Business-1 had an account with Processor-1 (ending in 2805) and used this account to process credit card transactions for its clients. ABPLANALP had access to this account and was authorized to engage in transactions as needed to fulfill his job responsibilities or for the benefit of Business-1. Although ABPLANALP was never authorized to withdraw money from this account for his personal benefit, over the relevant time period, ABPLANALP transferred millions of dollars from Business-1's account ending in 2805 to his own account at Processor-1 (ending in 2041) for his personal enrichment. ABPLANALP never told Business-1 about these withdrawals, and at all times operated under the false pretense that it was a legitimate activity within the scope of his employment, when in fact it was theft.

In order to facilitate some of these withdrawals, between late May and early July of 2025, ABPLANALP fraudulently ran a client's credit card number 52 different times, for alternating charges of $11,720 and $13,032, purportedly to pay for items the client had not ordered and to fulfill invoices that did not exist. In this manner, ABPLANALP caused Business-1 to improperly receive over $643,000 from its client, which he then transferred to his personal account at Processor-1. After discovering this aspect of the fraud, Victim-1 and Victim-2 were forced to use their personal savings to repay the client, which caused a substantial loss to their savings.

ABPLANALP also transferred money from Business-1's account ending in 2805 to various other friends and acquaintances as gifts, or to purchase items, or to repay debts he had taken from them. For example, ABPLANALP transferred over $118,000 to repay an individual from whom he had borrowed money in order to gamble.

Another way in which ABPLANALP stole money was by fraudulently directing clients and vendors of Business-1 to tender payments that were owed to Business-1 to his personal accounts. In March 2023, ABPLANALP directed one client to write a check to him in order to pay an invoice, and then deposited that check in his personal account. Similarly, ABPLANALP directed clients to electronically transfer money to his personal bank account, purportedly to satisfy outstanding invoices for items purchased. ABPLANALP also directed vendors of Business-1 to issue rebates and refunds to his personal account at Processor-1, rather than Business-1's account. Every such instruction to a client or to a vendor was a misrepresentation intended to further ABPLANALP's scheme to defraud.

ABPLANALP tried to conceal his theft by altering, deleting or making false entries in Business-1's accounting software. For example, ABPLANALP falsely entered a transaction reflecting the deposit of a check, when in fact that check had been deposited in ABPLANALP's personal account. He then re-entered that transaction repeatedly over different dates in an effort to reconcile the accounts. For a similar purpose, ABPLANALP deleted invoices that were owed, created unauthorized credit entries, or reduced amounts owed to zero by misclassifying them as charitable sponsorships, when in fact the clients had already paid the invoices.

In total, ABPLANALP caused a loss of $2,321,759.00 to Business-1 and its owners. He spent the majority of the funds stolen at various gambling institutions, including over $1 million at an online

sports betting company and over $1.35 million through another sports wagering service. Victim-1 and Victim-2 were forced to retain the services of a forensic accountant and other information and technology professionals, at a cost of approximately $50,000, in order to uncover the entirety of the scheme. Victim-2 was unable to retire as previously planned and had to return to work full-time.

ABPLANALP's theft and use of the money stolen from Business-1 was done with the intent to defraud, deceive and cheat Business-1 and its owners of money. ABPLANALP's false and fraudulent pretenses, representations, and promises, and concealment and omissions of facts, were material in that they had a natural tendency to influence, or were capable of influencing, Business-1, its owners, and various of its clients and vendors, to part with money. Had Business-1 or its owners been aware of ABPLANALP's misappropriation of its money, they would have immediately stopped it. Similarly, had Business-1's clients and vendors been aware of ABPLANALP's misrepresentations regarding where to send payments, they would not have diverted money to ABPLANALP's personal accounts.

In order to execute his scheme to defraud, ABPLANALP used and caused to be used several interstate wire communications, including a payment in the amount of $19,101.11 transferred from Business-1's account at Processor-1 to ABPLANALP's personal account at Processor-1 on or about June 29, 2025.

*I, CHRISTOPHER WILLIAM EDWARD ABPLANALP, have read and carefully reviewed with my attorney this Factual Basis for Plea. I agree it is true and correct. I also agree that, if this matter proceeded to trial, the United States could establish each of the facts contained within this Factual Basis for Plea beyond a reasonable doubt and those facts satisfy the elements of the offense to which I am pleading guilty. Additionally, I agree this Factual Basis for Plea is a summary made for the purpose of providing the Court with a factual basis for my guilty plea and it does not include all the facts known to me concerning criminal activity in which I and others engaged.*

Dated: 9-18-26

CHRISTOPHER WILLIAM EDWARD ABPLANALP
Defendant